**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIANGLE PETROLEUM CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 19-_____ (___) |

## CHAPTER 11 PLAN OF REORGANIZATION OF
## TRIANGLE PETROLEUM CORPORATION

Dated:  May 7, 2019

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Kelley A. Cornish
Alexander Woolverton
1285 Avenue of the Americas
New York, NY  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 373-3990

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (No. 3650)
Andrew L. Magaziner (No. 5426)
Shane M. Reil (No. 6195)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

**THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND WITHIN THE MEANING OF SECTION 1126 OF THE BANKRUPTCY CODE. THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTOR'S FILING FOR CHAPTER 11 BANKRUPTCY.**

---

[1]   The last four digits of the Debtor's taxpayer identification number are 0762. The Debtor's mailing address is 100 Fillmore Street, 5th Floor, Denver, Colorado 80206.

# TABLE OF CONTENTS

Page

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME,
  GOVERNING LAW AND DEFINED TERMS.................................................... 2

    A.    Rules of Interpretation, Computation of Time and Governing Law.......... 2

    B.    Definitions............................................................................................... 2

ARTICLE II. TREATMENT OF UNCLASSIFIED CLAIMS ................................. 11

    A.    Administrative Claims ............................................................................ 11

    B.    Priority Tax Claims................................................................................. 12

    C.    Statutory Fees......................................................................................... 12

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS
  AND EQUITY INTERESTS.................................................................... 13

    A.    Introduction............................................................................................ 13

    B.    Summary of Classification and Treatment of Classified Claims and
  Equity Interests ..................................................................................... 13

    C.    Classification and Treatment of Claims and Equity Interests.................. 13

    D.    Special Provisions Regarding Unimpaired Claims................................... 15

    E.    Subordinated Claims .............................................................................. 15

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ........................... 16

    A.    Acceptance by Class Entitled to Vote..................................................... 16

    B.    Presumed Acceptance of the Plan............................................................ 16

    C.    Deemed Rejection of the Plan.................................................................. 16

    D.    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code........ 16

ARTICLE V. MEANS FOR IMPLEMENTATION OF THIS PLAN ........................ 17

    A.    Corporate and Organizational Existence; Reorganized Capital
  Structure and the New Common Stock..................................................... 17

    B.    Organizational Documents of the Reorganized Debtor ........................... 17

    C.    Directors and Officers of Reorganized Debtor; Corporate
  Governance ........................................................................................... 17

    D.    Issuance of New Securities and Related Documents................................ 18

    E.    Restructuring Transactions ..................................................................... 18

    F.    Vesting of Assets in the Reorganized Debtor .......................................... 18

    G.    Release of Liens, Claims and Equity Interests......................................... 19

    H.    Cancellation of Stock, Certificates, Instruments and Agreements ........... 19

    I.    Corporate Action.................................................................................... 19

J.      Preservation and Maintenance of Debtor Causes of Action ..................... 19

K.      Exemption from Certain Transfer Taxes .................................................. 20

L.      Distributions .............................................................................................. 20

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ................................................................................................................. 21

A.      Rejection of Executory Contracts and Unexpired Leases......................... 21

B.      Assumption of Executory Contracts and Unexpired Leases; Cure
of Defaults ................................................................................................. 21

C.      Assumption of Insurance Policies ............................................................ 22

D.      Indemnification ......................................................................................... 23

E.      Reservation of Rights ................................................................................ 23

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS .................................... 24

A.      Distribution Record Date .......................................................................... 24

B.      Dates of Distributions ............................................................................... 24

C.      Distribution Agent .................................................................................... 24

D.      Cash Distributions ..................................................................................... 24

E.      Allocation Between Principal and Interest ............................................... 24

F.      Withholding Taxes .................................................................................... 25

G.      Surrender of Canceled Instruments or Securities..................................... 25

ARTICLE VIII. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................... 26

A.      Conditions Precedent to the Effective Date ............................................. 26

B.      Waiver of Conditions ................................................................................ 26

ARTICLE IX. RETENTION OF JURISDICTION .............................................................. 27

A.      Retention of Jurisdiction ........................................................................... 27

B.      Failure of Bankruptcy Court to Exercise Jurisdiction.............................. 28

ARTICLE X. EFFECTS OF CONFIRMATION ................................................................. 29

A.      General Settlement of Claims ................................................................... 29

B.      Binding Effect ........................................................................................... 29

C.      Discharge of the Debtor ............................................................................ 29

D.      Exculpation and Limitation of Liability .................................................. 30

E.      Releases by the Debtor .............................................................................. 30

F.      Releases by Holders of Claims ................................................................. 31

G.      Injunction .................................................................................................. 32

H.      Protection Against Discriminatory Treatment ......................................... 33

ARTICLE XI. MISCELLANEOUS PROVISIONS.................................................................. 34

    A.      Modification of Plan ............................................................................ 34

    B.      Revocation of Plan .............................................................................. 34

    C.      Severability of Plan Provisions ........................................................... 34

    D.      Successors and Assigns ....................................................................... 35

    E.      Term of Injunctions or Stays .............................................................. 35

    F.      Reservation of Rights ......................................................................... 35

    G.      Notices ............................................................................................... 35

    H.      Governing Law ................................................................................... 36

    I.      Exhibits .............................................................................................. 36

    J.      Conflicts ............................................................................................. 37

    K.      Immediate Binding Effect ................................................................... 37

    L.      Entire Agreement ............................................................................... 37

    M.      Reservation of Rights ......................................................................... 37

Exhibit A           Schedule of Assumed Executory Contracts and Unexpired Leases

## CHAPTER 11 PLAN OF REORGANIZATION OF
## TRIANGLE PETROLEUM CORPORATION

## INTRODUCTION

Triangle Petroleum Corporation, a Delaware corporation, as the Debtor,[2] hereby proposes this Plan for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtor. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the Disclosure Statement (distributed contemporaneously herewith) for a discussion of the Debtor's history, business, properties, and projections and the events leading up to Solicitation of this Plan and for a summary of the treatment provided for herein. The Debtor urges all Holders of Claims entitled to vote on this Plan to review the Disclosure Statement and this Plan, in full, before voting to accept or reject this Plan. There may be other agreements and documents that will be filed with the Bankruptcy Court that are referenced in this Plan as Exhibits. All such Exhibits are incorporated into and are a part of this Plan as if set forth in full herein. Subject to certain restrictions set forth in this Plan, and the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to amend, supplement, amend and restate, modify, revoke or withdraw this Plan prior to the Effective Date.

---

[2]    Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in <u>Article I.B</u> of this Plan.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections hereof; (e) unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (j) "$" or "dollars" means dollars in lawful currency of the U.S.; (k) any effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in a manner consistent with the overall purpose and intent of this Plan, all without further notice to or action, order, or approval of the Bankruptcy Court or any other entity, and, to the extent of any dispute with respect thereto, the Bankruptcy Court shall retain jurisdiction consistent with Article IX; and (l) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter. The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If any payment, distribution, act or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

### B.    Definitions

1.1    "**Accrued Professional Compensation**" means, at any date, and regardless of whether such amounts are billed or unbilled, all of a Professional's accrued and unpaid fees and reimbursable expenses for services rendered during the Chapter 11 Case through and including such date, whether or not such Professional has filed a fee application for payment of such fees and expenses, (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (ii) after applying any retainer that has been provided by the Debtor to such Professional and not

2

previously applied. No amount of a Professional's fees and expenses denied under a Final Order shall constitute Accrued Professional Compensation.

      1.2    "**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or section 1114(e)(2) of the Bankruptcy Code and entitled to priority under section 507(a)(1) of the Bankruptcy Code, including (a) actual, necessary costs and expenses of preserving the Debtor's Estate and operating the Debtor's business, (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under section 327, 328, 330, 331, 363, or 503(b) of the Bankruptcy Code to the extent incurred prior to and including the Effective Date, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code.

      1.3    "**Affiliate**" has the meaning set forth in section 101(2) of the Bankruptcy Code.

      1.4    "**Amended By-Laws**" means the Reorganized Debtor's amended or amended and restated by-laws, a substantially final form of which will be contained in the Plan Supplement to the extent they contain material changes to the existing documents.

      1.5    "**Amended Certificate of Incorporation**" means the Reorganized Debtor's amended or amended and restated certificate of incorporation, a substantially final form of which will be contained in the Plan Supplement.

      1.6    "**Allowed**" means, with respect to any Claim, such Claim or any portion thereof that the Debtor or the Reorganized Debtor has assented to the validity of or that has been (a) allowed by a Final Order of the Bankruptcy Court, (b) allowed pursuant to the terms of this Plan, (c) allowed by agreement between the Holder of such Claim, on one hand and the Debtor or Reorganized Debtor, as applicable, on the other hand, or (d) allowed by a Final Order of a court of competent jurisdiction.

      1.7    "**Avoidance Actions**" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtor or its Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies arising under chapter 5 of the Bankruptcy Code.

      1.8    "**Ballot**" means, with respect to the Holder of the Claim in the Voting Class, the applicable voting form distributed to such Holder on which the Holder is to indicate, among other things, acceptance or rejection of this Plan in accordance with the instructions contained therein and make any other elections or representations required pursuant to this Plan or as described in the Disclosure Statement.

      1.9    "**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended.

      1.10    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware.

1.11    "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms and the Local Rules, in each case as amended from time to time and as applicable to the Chapter 11 Case or proceedings therein.

1.12    "**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in New York, New York.

1.13    "**Cash**" means legal tender of the U.S. or the equivalent thereof.

1.14    "**Cause of Action**" means any action, proceeding, agreement, claim, cause of action, controversy, demand, right, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Cause of Action also includes:  (a) any right of setoff, cross-claim, counterclaim, or recoupment, and any claim on a contract or for a breach of duty imposed by law or in equity; (b) with respect to the Debtor, the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (e) any Avoidance Action; and (f) any state law fraudulent transfer claim.

1.15    "**Chapter 11 Case**" means the case commenced by the Debtor under chapter 11 of the Bankruptcy Code on the Petition Date in the Bankruptcy Court.

1.16    "**Claim**" means a "claim" against the Debtor as defined in section 101(5) of the Bankruptcy Code.

1.17    "**Class**" means a category of Claims or Equity Interests classified under Article III of the Plan pursuant to section 1122 of the Bankruptcy Code.

1.18    "**Confirmation**" means the entry by the Bankruptcy Court of the Confirmation Order on the docket of the Chapter 11 Case, within the meanings of Bankruptcy Rules 5003 and 9021.

1.19    "**Confirmation Date**" means the date upon which Confirmation occurs.

1.20    "**Confirmation Hearing**" means the hearing to consider confirmation of this Plan under section 1128 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.21    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan and approving the Disclosure Statement, entered pursuant to section 1129 of the Bankruptcy Code, which shall be in form reasonably satisfactory to the Debtor and the JPM Parties.

1.22    "**Cure**" means the payment of Cash, or the distribution of other property or other action (as the parties may agree or the Bankruptcy Court may order), as necessary to cure defaults under an Executory Contract or Unexpired Lease of the Debtor that the Debtor may assume under section 365(a) of the Bankruptcy Code.

1.23    "**Debtor**" means Triangle Petroleum Corporation, as debtor and debtor in possession under sections 1107 and 1108 of the Bankruptcy Code.

1.24    "**Disclosure Statement**" means that certain Disclosure Statement for the Chapter 11 Plan of Reorganization of Triangle Petroleum Corporation, as may be amended, supplemented, amended and restated, or otherwise modified from time to time, and that is prepared and distributed in accordance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, and applicable non-bankruptcy law.

1.25    "**Distribution Agent**" means the Reorganized Debtor or any party designated by the Reorganized Debtor to serve as distribution agent under this Plan.

1.26    "**Distribution Record Date**" means the Confirmation Date.

1.27    "**D&O Liability Insurance Policies**" means all insurance policies (including any "tail policy") for liability of the current or former directors and officers maintained by the Debtor as of the Petition Date or thereafter.

1.28    "**Effective Date**" means the date on which a notice of effectiveness is filed with the Bankruptcy Court confirming that (a) all conditions in Article VIII.A of this Plan have been satisfied or waived as provided for in Article VIII.B and (b) consummation of the Restructuring Transactions has occurred.

1.29    "**Entity**" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

1.30    "**Equity Interest**" means all outstanding ownership interests in the Debtor, including any interest evidenced by common or preferred stock, a limited liability company or other membership or partnership interest or unit, a warrant, an option, or any other right to acquire or otherwise receive any ownership interest in the Debtor, or any right to payment or compensation based upon any such interest, whether or not such interest is owned by the Holder of such right to payment or compensation.

1.31    "**Estate**" means the estate of the Debtor in the Chapter 11 Case, as created under section 541 of the Bankruptcy Code.

1.32    "**Exculpated Parties**" means, (a) the Debtor, (b) the Reorganized Debtor, and (c) all current officers, directors, professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives of the Debtor in their capacity as such.

1.33    "**Executory Contract**" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.34    "**Exhibit**" means an exhibit annexed to this Plan or as an exhibit or appendix to the Disclosure Statement (as such exhibits may be amended, supplemented, amended and restated, or otherwise modified from time to time).

1.35    "**Exit Facility**" means an exit term loan credit facility in an aggregate principal amount of $5,000,000 to be provided to the Reorganized Debtor by the Exit Facility Lender on the Effective Date pursuant to the Exit Facility Documents.

1.36    "**Exit Facility Credit Agreement**" means that certain credit agreement, a substantially final form of which will be contained in the Plan Supplement, which shall be effective on the Effective Date, by among the Reorganized Debtor and the Exit Facility Lender, as it may be amended, supplemented, amended and restated, or otherwise modified from time to time.

1.37    "**Exit Facility Lender**" means Chase Lincoln First Commercial Corporation in its capacity as lender under the Exit Facility Credit Agreement and each other party that becomes a lender thereunder from time to time in accordance with the terms of the Exit Facility Credit Agreement.

1.38    "**Exit Facility Documents**" means, collectively, the Exit Facility Credit Agreement and all other "Loan Documents" as defined therein, including all other agreements, documents, and instruments delivered or entered into pursuant thereto or in connection therewith (including any guarantee agreements and collateral documents) (in each case, as amended, restated, modified, or supplemented from time to time), each of which shall be, to the extent applicable.

1.39    "**Final Order**" means an order or judgment of the Bankruptcy Court or another court of competent jurisdiction as to which no stay has been entered and either the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, new trial, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or the Reorganized Debtor, as applicable, or, in the event that an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been affirmed, or otherwise not vacated, or such appeal, writ of certiorari, new trial, reargument, or rehearing shall have been denied, in each case, by the highest court to which such appeal, writ of certiorari, new trial, reargument, or rehearing had been sought and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

1.40    "**General Unsecured Claim**" means any Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Professional Fee Claim, Term Loan Claim, Secured Note Claim, or Other Secured Claim.

1.41    "**Governmental Unit**" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

1.42    "**Holder**" means an Entity holding a Claim against, or Equity Interest in, the Debtor as of the applicable date of determination.

1.43    "**Impaired**" means, with respect to a Claim, Equity Interest or Class of Claims or Equity Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

1.44    "**Indemnification Agreement**" means any organizational or employment and/or service agreement of or with the Debtor and currently in place, whether in the bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, or employment contracts, that provides for the indemnification of any current director, officer or employee of the Debtor.

1.45    "**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

1.46    "**JPMC**" means JPMorgan Chase Bank, N.A., its assignee, designee or transferee in its capacity Holder of the Term Loan Claim.

1.47    "**JPMS**" means J.P. Morgan Securities, LLC., its assignee, designee or transferee in its capacity as Holder of the Secured Note Claim.

1.48    "**JPM Parties**" means JPMC and JPMS, together.

1.49    "**Lien**" means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

1.50    "**Local Rules**" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

1.51    "**New Board**" means the initial board of directors of the Reorganized Debtor, which shall as of the Effective Date consist of members selected by JPMS and shall be disclosed in the Plan Supplement or announced on the record at the Confirmation Hearing.

1.52    "**New Common Stock**" means the common shares in the Reorganized Debtor issued and outstanding on the Effective Date after giving effect to all the Restructuring Transactions.

1.53    "**NOLs**" means net operating losses as determined for U.S. federal income tax purposes.

1.54　　"**Other Priority Claim**" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

1.55　　"**Other Secured Claim**" means any Secured Claim against the Debtor other than the Secured Note Claim.

1.56　　"**Person**" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association or other Entity, whether acting in an individual, fiduciary or other capacity.

1.57　　"**Petition Date**" means the date on which the Debtor files its petition for relief commencing the Chapter 11 Case.

1.58　　"**Plan**" means, collectively, this chapter 11 plan of reorganization, the Exhibits, all supplements, appendices, and schedules hereto, either in their present form or as the same may be amended, supplemented, amended and restated, or otherwise modified from time to time.

1.59　　"**Plan Document**" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including, without limitation, the documents to be included in the Plan Supplement, including, but not limited to, the Exit Facility, the Amended Certificate of Incorporation and the Amended By-Laws.

1.60　　"**Plan Supplement**" means any supplement to this Plan, and the compilation of documents, forms of documents, and Exhibits to this Plan, as amended, modified, or supplemented from time to time, initial drafts of which shall be filed by the Debtor as permitted herein on or before the Plan Supplement Filing Date, and which shall include the (a) Amended Certificate of Incorporation, (b) Amended By-Laws, (c) Exit Facility Credit Agreement, and (d) the identity of the members of the New Board and the officers of the Reorganized Debtor, as required by section 1129(a)(5) of the Bankruptcy Code.

1.61　　"**Plan Supplement Filing Date**" means the date that is not fewer than seven (7) days before the deadline to object to confirmation of this Plan.

1.62　　"**Priority Tax Claim**" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.63　　"**Professional**" means (a) any Entity employed in the Chapter 11 Case pursuant to section 327, 328, 363 or 1103 of the Bankruptcy Code and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.64　　"**Professional Claims Bar Date**" means the first Business Day that is thirty (30) days after the Effective Date.

1.65    "**Professional Fee Claim**" means an Administrative Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses, or other charges incurred on or after the Petition Date and prior to and including the Effective Date.

1.66    "**Professional Fee Escrow**" means an escrow account to be funded with the Professional Fee Escrow Amount by the Debtor and Reorganized Debtor on the Effective Date solely for the purpose of paying all Allowed Professional Fee Claims.

1.67    "**Professional Fee Escrow Amount**" means the aggregate Accrued Professional Compensation through the Effective Date as estimated by the Professionals in accordance with <u>Article II.A</u> hereof.

1.68    "**Pro Rata**" means, at any time, the proportion that the face amount of a Claim or Equity Interest in a particular Class bears to the aggregate face amount of all Claims or Equity Interests in that Class, unless this Plan provides otherwise.

1.69    "**Reinstated**" or "**Reinstatement**" means leaving a Claim Unimpaired under this Plan pursuant to section 1124(a)(2) of the Bankruptcy Code.

1.70    "**Related Parties**" means, with respect to an Entity that is a Released Party, collectively, its direct and indirect affiliates, officers, directors, employees, advisors, financial advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents, and other representatives, each in their capacity as such.

1.71    "**Releasesd Parties**" means, collectively, in each case solely in their respective capacities as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the JPM Parties, and (d) each of the Related Parties of the Entities in the foregoing (a)–(c); *provided*, *however*, that if either of the JPM Parties "opt out" of, or objects to, the releases provided in this Plan, as applicable, then such parties shall not be included in the definition of "Released Parties."

1.72    "**Releasing Parties**" means, collectively, in each case solely in their respective capacities as such: (a) the Debtor, (b) the Reorganized Debtor, (c) the JPM Parties, (d) each of the Related Parties of the Entities in the foregoing (a)–(c), and (e) those Holders of Claims (i) who vote to accept this Plan, (ii) who are Unimpaired under this Plan and do not timely object to the releases provided herein, (iii) whose vote to accept or reject this Plan is solicited but who do not vote either to accept or to reject this Plan and do not opt out of granting the releases herein, or (iv) who vote to reject this Plan but do not opt out of granting the releases herein, and (e) Holders of Equity Interests who do not opt out of granting the releases herein.

1.73    "**Reorganized**" means, in reference to the Debtor, the Debtor from and after the Effective Date.

1.74    "**Restructuring Transactions**" means the restructuring transactions for the Debtor, in accordance with, and subject to the terms and conditions set forth in, this Plan.

1.75    "**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the schedule (including any amendments or modifications thereto) of (a) agreements to be assumed by the Debtor pursuant to this Plan, and (b) proposed Cure amounts, if any, to be paid

on account of each agreement listed thereon, which is attached to this Plan as <u>Exhibit A</u>, as may be amended by the Debtor from time to time prior to the Confirmation Date.

1.76    "**Section 510(b) Claim**" means any Claim against the Debtor arising from rescission of a purchase or sale of a security of any Debtor or an Affiliate of any Debtor, for damages arising from the purchase or sale of such security, or for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.77    "**Secured Claim**" means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.78    "**Secured Note**" means that certain $120 million Amended and Restated 5.0% Convertible Second Lien Promissory Note dated September 28, 2018, by and among the Debtor and JPMS, as amended, restated or otherwise modified from time to time in accordance with its terms.

1.79    "**Secured Note Claim**" means approximately $167 million in aggregate outstanding principal and interest under the Secured Note.

1.80    "**Securities Act**" means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

1.81    "**Solicitation**" means the Debtor's formal request for acceptances of this Plan, consistent with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and applicable non-bankruptcy law.

1.82    "**Subsidiary Interests**" means the Debtor's interests in each of its direct non-debtor subsidiaries, including, without limitation Triangle Real Estate Properties, LLC; Ranger Fabrication, LLC; Nine Point Energy Holdings, Inc.; and Triangle Caliber Holdings, LLC.

1.83    "**Term Loan Claim**" means the approximately $2.0 million in outstanding principal under the Term Loan Agreement.

1.84    "**Term Loan Agreement**" means that certain $5.0 million Term Loan Agreement, between JPMC and the Debtor.

1.85    "**Third Party Released Claims**" shall have the meaning set forth in <u>Article III.D</u> of this Plan.

1.86    "**Unexpired Lease**" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.87    "**Unimpaired**" means any Claim that is not designated as Impaired.

1.88 **"Unimpaired Claim"** means Administrative Claims, Priority Tax Claims and any Claim arising prior to the Effective Date in Classes 1, 3 and 4 of this Plan.

1.89 **"U.S."** means the United States of America.

1.90 **"U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

1.91 **"Voting Class"** means Class 2.

1.92 **"Voting Record Date"** means the date for determining which Holders are entitled to receive the Disclosure Statement and vote to accept or reject this Plan, as applicable, which date is May 7, 2019, for the Holder of the Claim in the Voting Class.

1.93 **"Voting Deadline"** means the date by which a Holder of a Claim entitled to vote on this Plan must deliver a Ballot to accept or reject this Plan.

## ARTICLE II.

## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote on this Plan.

**A.    Administrative Claims**

Subject to subparagraph (i) below, in full and complete satisfaction, settlement, discharge and release of each Allowed Administrative Claim, except to the extent that a Holder of such Allowed Administrative Claim and either (x) the Debtor, or (y) the Reorganized Debtor, as applicable, agrees in writing to less favorable treatment, the Debtor or Reorganized Debtor, as applicable, shall pay to each Holder of an Allowed Administrative Claim, Cash in an amount equal to such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable (a) the Effective Date or, if payment is not then due, (b) on the due date of such Allowed Administrative Claim; *provided*, *however*, that Administrative Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.

(i)    <u>Professional Fee Claims</u>

(1)    Professionals shall submit final fee applications seeking approval of all Professional Fee Claims no later than the Professional Claims Bar Date. These applications remain subject to Bankruptcy Court approval under the standards established by the Bankruptcy Code, including the requirements of sections 327, 328, 330, 331, 363, 503(b), and 1103 of the Bankruptcy Code, as applicable. Payments to Professionals shall be made upon entry of an order approving such Professional Fee Claims.

(2)     The Reorganized Debtor is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course without the need for Bankruptcy Court approval.

(3)     On the Effective Date, the Debtor or the Reorganized Debtor will establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Escrow Amount.

## B.     Priority Tax Claims

On the Effective Date, each Holder of an Allowed Priority Tax Claim will, as determined by the Debtor or the Reorganized Debtor, as applicable, be satisfied in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.

## C.     Statutory Fees

Notwithstanding anything herein to the contrary, on the Effective Date, the Debtor shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation pursuant to 28 U.S.C. § 1930(a)(6). On and after the Effective Date, to the extent that the Chapter 11 Case remains open, and for so long as the Reorganized Debtor remains obligated to pay quarterly fees, the Reorganized Debtor shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor or Reorganized Debtor, as applicable, shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

## ARTICLE III.

### CLASSIFICATION AND TREATMENT OF
### CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.    Introduction**

All Claims and Equity Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below in accordance with section 1123(a)(1) of the Bankruptcy Code. The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including, without limitation, voting, Confirmation and distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

**B.    Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Entitled to Vote? |
|---|---|---|---|
| Class 1 | Term Loan Claim | Unimpaired | No (deemed to accept) |
| Class 2 | Secured Note Claim | Impaired | Yes |
| Class 3 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Unimpaired | No (deemed to accept) |
| Class 5 | Equity Interests & Section 510(b) Claims | Impaired | No (deemed to reject) |

**C.    Classification and Treatment of Claims and Equity Interests**

(i)    *Class 1—Term Loan Claim*

(1)    Classification: Class 1 consists of the Term Loan Claim. The Term Loan Claim is hereby Allowed for all purposes in the aggregate amount of $2,000,000.00.

(2)    Treatment: Except to the extent that JPMC agrees to a less favorable treatment or as otherwise provided herein, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed Term Loan Claim, on the Effective Date or as soon as reasonably practicable thereafter, the Allowed Term Loan Claim be converted into and deemed to be obligations under the Exit Facility Credit Agreement.

(3)    Impairment and Voting: Class 1 is Unimpaired by this Plan. The Holder of the Allowed Term Loan Claim is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Allowed Term Loan Claim is not entitled to vote to accept or reject this Plan.

13

(ii)     *Class 2—Secured Note Claim*

(1)     <u>Classification</u>: Class 2 consists of the Secured Note Claim. The Secured Note Claim is hereby Allowed for all purposes in the amount of $167,130,687.38.

(2)     <u>Treatment</u>:  Except to the extent that JPMS agrees to a less favorable treatment or as otherwise provided herein, in full and final satisfaction, settlement, release, and discharge of and in exchange for the Allowed Secured Note Claim, on the Effective Date or as soon as reasonably practicable thereafter, JPMS shall receive 100% of the New Common Stock to be issued by the Reorganized Debtor.

(3)     <u>Impairment and Voting</u>: Class 2 is Impaired by this Plan and JPMS is entitled to vote to accept or reject this Plan.

(iii)    *Class 3—Other Secured Claims*

(1)     <u>Classification</u>: Class 3 consists of all Other Secured Claims. All Other Secured Claims are Allowed.

(2)     <u>Treatment</u>: In full and final satisfaction, settlement, discharge and release of, and in exchange for, each Other Secured Claim, on the Effective Date, at the option of the Debtor, each Other Secured Claim shall be (i) paid in full in Cash, (ii) Unimpaired and Reinstated or (iii) treated on such other terms as either the Debtor or the Reorganized Debtor, as applicable, and the Holder(s) thereof may agree.

(3)     <u>Impairment and Voting</u>: Class 3 is Unimpaired by this Plan. Each Holder of an Other Secured Claim is conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject this Plan.

(iv)    *Class 4—General Unsecured Claims*

(1)     <u>Classification</u>: Class 4 consists of all General Unsecured Claims.

(2)     <u>Treatment</u>:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, (A) payment in Cash in an amount equal to such Allowed General Unsecured Claim on the later of (x) the Effective Date or (y) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Unsecured Claim; or (B) such other treatment as may be required so as to render such Allowed General Unsecured Claim Unimpaired.

(3)     <u>Impairment and Voting</u>: Class 4 is Unimpaired by this Plan. Each Holder of a General Unsecured Claim is conclusively presumed to have accepted this Plan

pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Allowed a General Unsecured Claim is not entitled to vote to accept or reject this Plan.

(v)    *Class 5—Equity Interests & Section 510(b) Claims*

(1)    <u>Classification</u>: Class 5 consists of all Equity Interests & Section 510(b) Claims.

(2)    <u>Treatment:</u> On the Effective Date, all Equity Interests and Section 510(b) Claims shall be cancelled, and Holders of Equity Interests and Section 510(b) Claims shall receive no recovery under this Plan.

(3)    <u>Impairment and Voting</u>: Class 5 is Impaired by this Plan, and each Holder of an Equity Interest and/or Section 510(b) Claim is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Equity Interest and/or Section 510(b) Claim is not entitled to vote to accept or reject this Plan.

**D.    Special Provisions Regarding Unimpaired Claims**

The Debtor, the Reorganized Debtor and any other Entity shall retain all defenses, counterclaims, rights to setoff, and rights to recoupment, if any, as to Unimpaired Claims. Holders of Unimpaired Claims shall not be required to file a proof of claim with the Bankruptcy Court and shall retain all their rights under applicable non-bankruptcy law to pursue their Unimpaired Claims in any forum with jurisdiction over the parties. Notwithstanding anything to the contrary in this Plan, each Holder of an Allowed Other Secured Claim shall be entitled to enforce its rights in respect of such Unimpaired Claim against the Debtor or the Reorganized Debtor, as applicable, until such Unimpaired Claim has been either (a) paid in full (i) on terms agreed to between the Holder of such Unimpaired Claim and the Debtor or the Reorganized Debtor, as applicable, or (ii) in accordance with the terms and conditions of the applicable documentation or laws giving rise to such Unimpaired Claim or (b) otherwise satisfied or disposed of as determined by a court of competent jurisdiction. If the Debtor or the Reorganized Debtor dispute any Unimpaired Claim, such dispute shall be determined, resolved or adjudicated pursuant to applicable non-bankruptcy law.

**E.    Subordinated Claims**

Pursuant to section 510 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

**A.      Acceptance by Class Entitled to Vote**

Class 2 is the only Class of Claims of the Debtor that is entitled to vote to accept or reject this Plan. Class 2 shall have accepted this Plan if JPMS votes to accept this Plan.

**B.      Presumed Acceptance of the Plan**

Classes 1, 3 and 4 are Unimpaired by this Plan and are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

**C.      Deemed Rejection of the Plan**

Class 5 is Impaired by this Plan and is conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.

**D.      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**

The Debtor may request Confirmation of this Plan under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept this Plan pursuant to section 1126 of the Bankruptcy Code. The Debtor, with the consent of the JPM Parties, reserves the right to modify this Plan or the Disclosure Statement to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THIS PLAN

**A.**    **Corporate and Organizational Existence; Reorganized Capital Structure and the New Common Stock**

Except as otherwise provided in this Plan, the Debtor shall continue to exist after the Effective Date as a corporate Entity, with all the powers of a corporation pursuant to the laws of the State of Delaware and pursuant to its certificate of incorporation and bylaws in effect prior to the Effective Date, as amended by this Plan, the Plan Supplement, or otherwise and as set forth in the Amended Certificate of Incorporation and the Amended By-Laws.

On the Effective Date, the new capital structure of the Reorganized Debtor shall consist of the Exit Facility and the New Common Stock. The rights, priorities and restrictions with respect to the New Common Stock shall be governed by the Amended Certificate of Incorporation and the Amended By-Laws.

**B.**    **Organizational Documents of the Reorganized Debtor**

On the Effective Date, pursuant to this Plan, the Amended By-Laws and Amended Certificate of Incorporation shall become effective and be deemed to amend and restate the Debtor's existing certificate or articles of incorporation and by-laws and each holder of New Common Stock shall be automatically deemed a party thereto and bound thereby in accordance with the terms of the Amended By-Laws and Amended Certificate of Incorporation. To the extent necessary, the organizational documents of the Reorganized Debtor will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate this Plan and the transactions contemplated herein. After the Effective Date, the Reorganized Debtor may amend and restate the Amended By-Laws, Amended Certificate of Incorporation, and other applicable organizational documents, as permitted by applicable law and pursuant to the terms contained therein.

**C.**    **Directors and Officers of Reorganized Debtor; Corporate Governance**

The New Board shall be selected by JPMS, in its capacity as Holder of the Allowed Secured Note Claim, in accordance with the Amended By-Laws and Amended Certificate of Incorporation, effective as of the Effective Date. To the extent not previously disclosed, the Debtor will disclose prior to or at the Confirmation Hearing, the affiliations of each Person proposed to serve on the New Board or as an officer of the Reorganized Debtor, and, to the extent such Person is an insider other than by virtue of being a manager, director or officer, the nature of any compensation for such Person.

**D.**     **Issuance of New Securities and Related Documents**

On the Effective Date, the Reorganized Debtor will be authorized to, and will, issue and execute, as applicable, the New Common Stock and related documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity subject to the terms of this Plan, the Amended By-Laws and Amended Certificate of Incorporation.

The issuance and distribution of the New Common Stock will be made in reliance on the exemption from registration under the Securities Act provided by section 1145(a) of the Bankruptcy Code, or section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder, in each case to the extent applicable, and will be exempt from registration under applicable securities laws.

**E.**     **Restructuring Transactions**

Prior to, on, or after the Effective Date, and pursuant to this Plan, the Debtor, and/or the Reorganized Debtor, as applicable, shall implement the Restructuring Transactions. The Debtor and/or the Reorganized Debtor, as applicable, shall take any actions, as agreed to by the JPM Parties, as may be necessary or appropriate to effect a restructuring of the Debtor's business or the overall organization or capital structure consistent with the terms of this Plan. All matters provided for pursuant to this Plan that would otherwise require approval of the equity holders, directors or officers of the Debtor (as of or prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law, the provisions of the Amended By-Laws and Amended Certificate of Incorporation, and without any requirement of further action by the equity holders, managing members, members, managers, directors, or officers of the Debtor, or the need for any approvals, authorizations, actions or consents of any Person.

**F.**     **Vesting of Assets in the Reorganized Debtor**

Except as provided elsewhere in this Plan, or in the Confirmation Order, on or after the Effective Date, all property and assets of the Estate, including without limitation, (a) all of the Subsidiary Interests, (b) all Causes of Action and Avoidance Actions, but only to the extent such Causes of Action and Avoidance Actions have not been waived or released pursuant to the terms of this Plan, pursuant to an order of the Bankruptcy Court, or otherwise, (c) NOLs and other similar tax attributes, and any property and assets acquired by the Debtor pursuant to this Plan, will vest in the Reorganized Debtor, free and clear of all Liens or Claims.

Except as may be otherwise provided in this Plan, on and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan, the Confirmation Order, the Amended By-Laws or the Amended Certificate of Incorporation.

**G.    Release of Liens, Claims and Equity Interests**

Except as otherwise provided in this Plan (and, in particular, Articles III(C)(iii) and III(C)(iv)) or in any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, concurrently with the applicable distributions made pursuant to this Plan, all Liens, Claims, or Equity Interests in or against the property of the Estate will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Any Entity holding such Liens, Claims, or Equity Interests will, if necessary, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtor such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtor and shall incur no liability to any Entity in connection with its execution and delivery of any such instruments.

**H.    Cancellation of Stock, Certificates, Instruments and Agreements**

On the Effective Date, all stock, units, instruments, certificates, agreements and other documents evidencing the Equity Interests will be cancelled, and the obligations of the Debtor thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.

**I.    Corporate Action**

Each of the matters provided for under this Plan involving the corporate structure of the Debtor or any corporate action to be taken by or required of the Debtor or Reorganized Debtor shall be deemed to have occurred and be effective as provided herein, and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by shareholders, creditors or directors of the Debtor or the Reorganized Debtor, as applicable. To the extent permitted by applicable law the authorizations and approvals contemplated by this Article V.I shall be effective notwithstanding any requirements under nonbankruptcy law.

**J.    Preservation and Maintenance of Debtor Causes of Action**

(i)    Maintenance of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, except as otherwise provided in Article X or elsewhere in this Plan or the Confirmation Order, or in any contract, instrument, release, or other agreement entered into in connection with this Plan, on and after the Effective Date, the Reorganized Debtor (and only the Reorganized Debtor) shall retain any and all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including in an adversary proceeding filed in the Chapter 11 Case.

(ii)      Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against a Holder of a Claim or an Equity Interest or other Entity is (A) expressly waived, relinquished, released, compromised or settled in this Plan (including, and for the avoidance of doubt, the releases contained in <u>Article X</u> of this Plan) or any Final Order (including the Confirmation Order), or (B) subject to the discharge and injunction provisions in <u>Article X</u> of this Plan, and the Confirmation Order, in the case of each of clauses (A) and (B), the Debtor and the Reorganized Debtor, as applicable, expressly reserve such Cause of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action upon or after the Confirmation of this Plan or the Effective Date of this Plan based on this Plan or the Confirmation Order. No Entity may rely on the absence of a specific reference in this Plan, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it. The Debtor and the Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in this Plan.

**K.      Exemption from Certain Transfer Taxes**

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers or mortgages from or by the Debtor to the Reorganized Debtor or any other Person or entity pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption under section 1146(a) of the Bankruptcy Code specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution, and/or sale of any of the New Common Stock and any other securities of the Debtor or the Reorganized Debtor; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation, or dissolution; (c) deeds; (d) bills of sale; or (e) assignments executed in connection with any Restructuring Transaction occurring under this Plan.

**L.      Distributions**

Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for the Debtor or Reorganized Debtor to make payments required pursuant to this Plan will be paid from the Cash balances of the Debtor or the Reorganized Debtor, as applicable. Cash payments to be made pursuant to this Plan will be made by the Reorganized Debtor, as applicable, or any designated Affiliates of the Reorganized Debtor on its behalf.

**ARTICLE VI.**

**TREATMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES**

**A.    Rejection of Executory Contracts and Unexpired Leases**

(i)    <u>Automatic Rejection</u>. Except as otherwise provided herein, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases; (ii) has been previously assumed or rejected by the Debtor by Final Order of the Bankruptcy Court or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein.

The Confirmation Order will constitute an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under section 502(g) of the Bankruptcy Code, subject to compliance with the requirements of this Plan.

(ii)    <u>Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases</u>. Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed no later than thirty (30) days after the later of the Effective Date or the effective date of rejection. Any proofs of Claim arising from the rejection of the Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtor or the Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

**B.    Assumption of Executory Contracts and Unexpired Leases; Cure of Defaults**

(i)    Upon the occurrence of the Effective Date, each Executory Contract or Unexpired Lease (other than Executory Contracts or Unexpired Leases that (a) has been previously rejected by the Debtor by Final Order of the Bankruptcy Court or has been rejected by the Debtor by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date or (b) is the subject of a motion to reject pending as of the Effective Date) listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, which is attached to this Plan as <u>Exhibit A</u>, shall be assumed, or assumed and assigned, as applicable, and shall

21

vest in and be fully enforceable by the Reorganized Debtor or its assignee in accordance with such contract or lease's terms, except as modified by the provisions of this Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law.

(ii)    Any monetary defaults under each Executory Contract or Unexpired Lease to be assumed pursuant to this Plan will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the applicable Cure amount in Cash, on the later of (1) the Effective Date and (2) the date such payment is due pursuant to the terms of the assumed Executory Contract or Unexpired Lease, as applicable, in the amount set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, which is attached to this Plan as Exhibit A, or on such other terms as the parties to such Executory Contract or Unexpired Lease may otherwise agree.

Any objection by a counterparty to the Cure amount associated with any Executory Contract or Unexpired Lease to be assumed pursuant to this Plan must be filed, served and actually received by the Debtor by no later than seven (7) days prior to the date of the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption or Cure amount will be deemed to have assented thereto and will be deemed to have forever released and waived any objection to the proposed assumption or Cure amount. In the event of a dispute regarding (1) the Cure amount, (2) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or (3) any other matter pertaining to assumption, the applicable Cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. **Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that is assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court.**

## C.    Assumption of Insurance Policies

Notwithstanding anything in this Plan to the contrary, each of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under this Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including any obligations to obtain tail coverage liability insurance due to the change in control triggered on the Effective Date). Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's assumption of, and assignment to, the Reorganized Debtor of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in this Plan, Confirmation shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed and assigned by the Debtor to the Reorganized Debtor under this Plan as to which no proof of claim need be filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtor shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all directors and officers of the Debtor who served in such capacity as of the Petition Date shall be entitled to the full benefits of any such policy for the full term of such policy (and all tail coverage related thereto) regardless of whether such directors and/or officers remain in such positions after the Effective Date.

**D.      Indemnification**

The indemnification provisions in any Indemnification Agreement with respect to or based upon any act or omission taken or omitted by an indemnified party in such indemnified party's capacity under such Indemnification Agreement will be Reinstated (or assumed, as the case may be) and will survive effectiveness of this Plan; *provided, however*, that nothing in this Article VI.D of the Plan shall (i) reinstate any Claim against the Debtor which has been released or discharged  in any contract, instrument, release or other agreement or document entered into or delivered prior to the Petition date, or (ii) provide for the assumption of any indemnification agreement not expressly assumed pursuant to this Plan.

**E.      Reservation of Rights**

Nothing contained in this Plan shall constitute an admission by the Debtor, Reorganized Debtor, or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or Reorganized Debtor have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or Reorganized Debtor, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

# ARTICLE VII.

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.      Distribution Record Date**

Distributions hereunder to the Holders of Allowed Claims shall be made to the Holders of such Claims as of the Distribution Record Date. Any transfers of Claims after the Distribution Record Date shall not be recognized for purposes of this Plan unless otherwise provided herein.

**B.      Dates of Distributions**

Except as otherwise provided in this Plan, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim shall receive the distributions that this Plan provides for Allowed Claims in the applicable Class and in the manner provided herein. In the event that any payment or act under this Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Except as otherwise provided in this Plan, Holders of Allowed Claims shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

**C.      Distribution Agent**

Except as otherwise provided in this Plan, all distributions under this Plan shall be made by the Distribution Agent. The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan, (b) make all distributions contemplated hereby, (c) empower professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as are necessary and proper to implement the provisions hereof. If the Distribution Agent is an entity other than the Reorganized Debtor, such entity shall be paid its reasonable fees and expenses, including the reasonable fees and expenses of its attorneys or other professionals.

**D.      Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtor.

**E.      Allocation Between Principal and Interest**

Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest accrued through the Effective Date, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**F.      Withholding Taxes**

Pursuant to section 346(f) of the Bankruptcy Code, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities and shall be entitled to deduct any federal, state or local withholding taxes from any distributions made with respect to Allowed Claims, as appropriate. From and as of the Effective Date, the Reorganized Debtor shall comply with all reporting obligations imposed on it by any Governmental Unit in accordance with applicable law with respect to such withholding taxes. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. As a condition to receiving any distribution under this Plan, the Reorganized Debtor may require that the Holder of an Allowed Claim entitled to receive a cash distribution pursuant to this Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtor to comply with applicable tax reporting and withholding laws. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a distribution hereunder shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution.

**G.      Surrender of Canceled Instruments or Securities**

Except as otherwise provided herein, as a condition precedent to receiving any distribution on account of its Allowed Claim, the Holder of the Allowed Claim in the Voting Class based upon an instrument or other security shall be deemed to have surrendered such instrument, security or other documentation underlying such Claim and all such surrendered instruments, securities and other documentation shall be deemed canceled pursuant to Article V.L of this Plan.

# ARTICLE VIII.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**A.      Conditions Precedent to the Effective Date**

Effectiveness of this Plan is subject to the satisfaction of each of the following conditions precedent:

(i)      The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been filed and shall be reasonably acceptable to the JPM Parties; and

(ii)      the Bankruptcy Court shall have entered the Confirmation Order, which shall be in form and substance acceptable to the Debtor and the JPM Parties, and the Confirmation Order shall, among other things, provide that the Debtor and the Reorganized Debtor are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the agreements and documents created in connection with this Plan;

(iii)      the Professional Fee Escrow shall have been funded;

(iv)      all governmental and third-party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by this Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions; and

(v)      all documents and agreements necessary to implement this Plan shall have (i) been tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

**B.      Waiver of Conditions**

The conditions to the Effective Date of this Plan set forth in this Article VIII may be waived only if waived in writing by the Debtor, with the reasonable consent of the JPM Parties; *provided*, that the condition requiring that the Confirmation Order shall have been entered by the Bankruptcy Court may not be waived.

# ARTICLE IX.

## RETENTION OF JURISDICTION

### A.      Retention of Jurisdiction

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor and this Plan as is legally permissible, including jurisdiction to:

(i)      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

(ii)      grant or deny any applications for allowance of Professional Fee Claims;

(iii)      resolve any matters related to the assumption of any Executory Contract or Unexpired Lease to which the Debtor is party;

(iv)      resolve any issues related to any matters adjudicated in the Chapter 11 Case;

(v)      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(vi)      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending or that may be commenced in the Chapter 11 Case as of the Effective Date, and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date; *provided*, that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

(vii)      resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan, the Confirmation Order, and all orders previously entered into by the Bankruptcy Court, or any Entity's obligations incurred in connection with this Plan;

(viii)      issue and enforce injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(ix)      enforce the terms and condition of this Plan and the Confirmation Order;

(x)      resolve any cases, controversies, suits or disputes with respect to the releases, the exculpations, the indemnification provisions and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to

27

implement, enforce, or determine the scope of all such releases, exculpations, injunctions and other provisions;

(xi)    enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(xii)    resolve any cases, controversies, suits or disputes that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted or entered into in connection with this Plan or the Disclosure Statement;

(xiii)    consider any modifications of this Plan, to cure any defect or omission, or to reconcile any inconsistency in any order previously entered by the Bankruptcy Court, including the Confirmation Order;

(xiv)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xv)    hear any other matter not inconsistent with the Bankruptcy Code; and

(xvi)    enter an order closing the Chapter 11 Case.

As of the Effective Date, notwithstanding anything in this Article IX to the contrary, the Amended By-Laws and Amended Certificate of Incorporation shall be governed by the respective jurisdictional provisions therein.

**B.      Failure of Bankruptcy Court to Exercise Jurisdiction**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter, including the matters set forth in Article IX.A of this Plan, the provisions of this Article IX shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

# ARTICLE X.

## EFFECTS OF CONFIRMATION

### A.    General Settlement of Claims

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to this Plan, the provisions of this Plan shall constitute a good faith compromise of all Claims and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim may have with respect to any Allowed Claim, or any distribution to be made on account of such Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, the Reorganized Debtor and Holders of Claims and is fair, equitable, and reasonable.

### B.    Binding Effect

**ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THIS PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR, AND EACH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT ANY SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THIS PLAN, (II) HAS FILED A PROOF OF CLAIM OR EQUITY INTEREST IN THE CHAPTER 11 CASE OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THIS PLAN OR AFFIRMATIVELY VOTED TO REJECT THIS PLAN.**

### C.    Discharge of the Debtor

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by this Plan or the Confirmation Order, and effective as of the Effective Date: (i) the rights afforded herein and the treatment of all Claims and Equity Interests herein will be in exchange for and in complete satisfaction, settlement, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (ii) this Plan will bind all Holders of Claims and Equity Interests, notwithstanding whether any such Holders abstained from voting to accept or reject this Plan or voted to reject this Plan; (iii) all Claims and Equity Interests will be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto will be extinguished completely, including any liability of the kind specified under section 502(g), 502(h) or 502(i) of the Bankruptcy Code; and (iv) except as otherwise expressly provided for in this Plan, all Entities will be precluded from asserting against, derivatively on behalf of, or through, the Debtor, the Debtor's Estate, the Reorganized Debtor, each of their successors and assigns, and each of their assets and properties, any other Claims or Equity Interests based upon

any documents, instruments or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

### D.      Exculpation and Limitation of Liability

To the maximum extent permitted under applicable non-bankruptcy law, the Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, filing, disseminating, implementing, administering, confirming or effecting the consummation of the Chapter 11 Case, this Plan, the Disclosure Statement, the Amended By-Laws and Amended Certificate of Incorporation, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan, or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtor, the approval of the Disclosure Statement, or Confirmation or consummation of this Plan; *provided*, *however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted fraud, gross negligence, or willful misconduct, but in all respects each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, this Plan.

### E.      Releases by the Debtor

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE DEBTOR AND ITS ESTATE SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE LAWS OR OTHERWISE, INCLUDING AVOIDANCE ACTIONS, THOSE CAUSES OF ACTION BASED ON VEIL PIERCING OR ALTER-EGO THEORIES OF LIABILITY, CONTRIBUTION, INDEMNIFICATION, JOINT LIABILITY OR OTHERWISE THAT THE DEBTOR OR THE DEBTOR'S ESTATE WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S RESTRUCTURING, THE RESTRUCTURING TRANSACTIONS, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS**

TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THIS PLAN, THE DISCLOSURE STATEMENT, OR ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE PURSUIT OF CONFIRMATION, ANY ACTION OR ACTIONS TAKEN IN FURTHERANCE OF OR CONSISTENT WITH THE ADMINISTRATION OR IMPLEMENTATION OF THIS PLAN OR THE DISTRIBUTION OF THE NEW COMMON STOCK AND RELATED DOCUMENTS OR OTHER PROPERTY UNDER THIS PLAN, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ARISING FROM OR RELATING TO ANY OF THE FOREGOING, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; *PROVIDED*, *HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE (I) SHALL OPERATE TO WAIVE AND RELEASE ONLY THOSE CAUSES OF ACTION EXPRESSLY SET FORTH IN AND RELEASED BY THIS PLAN AND (II) SHALL NOT OPERATE TO WAIVE AND RELEASE THE RIGHTS OF THE DEBTOR OR THE REORGANIZED DEBTOR TO ENFORCE THIS PLAN, THE CONFIRMATION ORDER, THE ISSUANCE OF THE NEW COMMON STOCK OR ANY RELATED AGREEMENTS, INSTRUMENTS AND OTHER DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED OR REINSTATED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT.

F.    **Releases by Holders of Claims**

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, EFFECTIVE AS OF THE EFFECTIVE DATE AND TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR AND ITS ESTATE AND THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH OF THE RELEASING PARTIES SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY AND FOREVER, RELEASED AND DISCHARGED THE DEBTOR AND ITS ESTATE AND THE RELEASED PARTIES FROM ANY AND ALL CLAIMS, EQUITY INTERESTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, CAUSES OF ACTION, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTOR OR THE DEBTOR'S ESTATE, WHETHER KNOWN OR UNKNOWN, ASSERTED OR UNASSERTED, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE LAWS OR OTHERWISE, INCLUDING AVOIDANCE ACTIONS, THOSE CAUSES OF ACTION BASED ON VEIL PIERCING OR ALTER-EGO THEORIES OF LIABILITY, CONTRIBUTION, INDEMNIFICATION, JOINT LIABILITY OR OTHERWISE THAT ANY SUCH RELEASING PARTY WOULD

HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY), BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTOR, THE DEBTOR'S RESTRUCTURING, THE RESTRUCTURING TRANSACTIONS, THE CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR OR ANY RELEASED PARTY, ON ONE HAND, AND ANY RELEASING PARTY, ON THE OTHER HAND, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR DURING THE CHAPTER 11 CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THIS PLAN, THE DISCLOSURE STATEMENT, THE ISSUANCE OF THE NEW COMMON STOCK AND/OR ANY RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS, THE PURSUIT OF CONFIRMATION, ANY ACTION OR ACTIONS TAKEN IN FURTHERANCE OF OR CONSISTENT WITH THE ADMINISTRATION OR IMPLEMENTATION OF THIS PLAN OR THE DISTRIBUTION OF THE NEW COMMON STOCK, OR OTHER PROPERTY UNDER THIS PLAN, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE ARISING FROM OR RELATING TO ANY OF THE FOREGOING, OTHER THAN CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION OF A RELEASED PARTY THAT CONSTITUTES ACTUAL FRAUD, WILLFUL MISCONDUCT, OR GROSS NEGLIGENCE; *PROVIDED, HOWEVER,* THAT THE FOREGOING PROVISIONS OF THIS RELEASE (I) SHALL OPERATE TO WAIVE AND RELEASE ONLY THOSE CAUSES OF ACTION EXPRESSLY SET FORTH IN AND RELEASED BY THIS PLAN AND (II) SHALL NOT OPERATE TO WAIVE AND RELEASE THE RIGHTS OF THE RELEASING PARTIES TO ENFORCE THIS PLAN, THE CONFIRMATION ORDER, THE NEW COMMON STOCK OR ANY RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THIS PLAN OR ASSUMED OR REINSTATED PURSUANT TO THIS PLAN OR FINAL ORDER OF THE BANKRUPTCY COURT.

G.     **Injunction**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, ALL PERSONS OR ENTITIES THAT HAVE HELD, CURRENTLY HOLD OR MAY HOLD A CLAIM THAT IS DISCHARGED OR AN EQUITY INTEREST THAT IS TERMINATED PURSUANT TO THE TERMS OF THIS PLAN ARE PERMANENTLY ENJOINED AND PRECLUDED FROM TAKING ANY OF THE FOLLOWING ACTIONS ON ACCOUNT OF ANY SUCH DISCHARGED CLAIMS OR TERMINATED EQUITY INTERESTS OR RIGHTS: (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST ANY RELEASED PARTY (OR PROPERTY OR ESTATE OF ANY RELEASED PARTY) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH

**RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION OR LIABILITIES, AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR OR THEIR RESPECTIVE PROPERTY; (II) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR OR THEIR RESPECTIVE PROPERTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (III) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM OR ENCUMBRANCE AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR OR THEIR RESPECTIVE PROPERTY ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (IV) ASSERTING A SETOFF, RIGHT OF SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTOR OR THE REORGANIZED DEBTOR OR THEIR RESPECTIVE PROPERTY, *PROVIDED*, THAT ANY RIGHTS OF SETOFF AND RECOUPMENT OF ANY ENTITY OR PERSON ARE PRESERVED FOR THE PURPOSE OF ASSERTING SUCH RIGHTS AS A DEFENSE TO ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTOR OR ITS ESTATE REGARDLESS OF WHETHER SUCH ENTITY OR PERSON IS THE HOLDER OF AN ALLOWED CLAIM; AND (V) COMMENCING OR CONTINUING ANY ACTION, ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED OR COMPROMISED PURSUANT TO THIS PLAN, THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN.**

## H.    Protection Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor is granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

### A.    Modification of Plan

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend, supplement, amend and restate, or otherwise modify this Plan prior to the entry of the Confirmation Order; (b) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend, supplement, amend and restate, or otherwise modify this Plan in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan; and (c) a Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as amended, supplemented, amended and restated, or otherwise modified, if the proposed amendment, supplement, amendment and restatement, or other modification does not materially and adversely change the treatment of the Claim of such Holder, or release any claims or liabilities reserved by such Holder under this Plan. Entry of the Confirmation Order shall mean that all modifications or amendments to this Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019. Prior to the Effective Date, the Debtor may make appropriate technical adjustments to this Plan without further order or approval of the Bankruptcy Court.

### B.    Revocation of Plan

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent chapter 11 plan(s). If the Debtor revokes or withdraws this Plan, or if Confirmation or consummation of this Plan does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by the Debtor or any other Entity.

### C.    Severability of Plan Provisions

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted and the Debtor may amend, supplement, amend and restate, or otherwise modify this Plan to correct the defect, by amending or deleting the offending provision or otherwise, or

may withdraw this Plan. Notwithstanding any such holding of the Bankruptcy Court, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**D.      Successors and Assigns**

The rights, benefits and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person or Entity.

**E.      Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case, either by virtue of sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, shall remain in full force and effect until the Effective Date has occurred.

**F.      Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and the Effective Date shall have occurred. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or Equity Interest or other Entity, in each case, prior to the Effective Date.

**G.      Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtor or the JPM Parties under this Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) facsimile transmission or (e) email transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or email transmission, upon confirmation of transmission, addressed as follows:

**If to the Debtor:**

Triangle Petroleum Corporation
100 Fillmore Street
5th Floor
Denver, Colorado 80206
Attn:  Ryan D. McGee, Esq. (rmcgee@trianglepetroleum.com)

**with a copy to (which shall not constitute notice):**

Counsel to the Debtor

>Paul, Weiss, Rifkind, Wharton & Garrison LLP
>1285 Avenue of the Americas
>New York, NY 10019
>Attn:  Kelley A. Cornish, Esq. (kcornish@paulweiss.com)
>       Alexander Woolverton, Esq. (awoolverton@paulweiss.com)

>Facsimile: (212) 373-3990

>– and –

>Young Conaway Stargatt & Taylor, LLP
>Rodney Square
>1000 North King Street
>Wilmington, DE 19801
>Attn:  Pauline K. Morgan, Esq. (pmorgan@ycst.com)
>       Andrew L. Magaziner, Esq. (amagaziner@ycst.com)
>       Shane Reil, Esq. (sreil@ycst.com)
>Facsimile: (302) 571-1253

**If to the JPM Parties:**

>Duane Morris LLP
>30 South 17th Street
>Philadelphia, PA 19103-4196
>Attn: Lawrence J. Kotler, Esq. (ljkotler@duanemorris.com)
>Facsimile: (215) 979-1020

**H.     Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**I.     Exhibits**

All exhibits and schedules to this Plan, including the Exhibits, are incorporated and are a part of this Plan as if set forth in full herein.

**J.      Conflicts**

In the event of a conflict between this Plan and the Disclosure Statement, the terms of this Plan shall control in all respects. In the event of a conflict between the Confirmation Order and this Plan, the Confirmation Order shall control.

**K.      Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtor, the Reorganized Debtor, the Holders of Claims and Equity Interests, the Released Parties, and each of their respective successors and assigns.

**L.      Entire Agreement**

On the Effective Date, this Plan, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

**M.      Reservation of Rights**

Except as otherwise provided herein, this Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the filing of this Plan, any statement or provision of this Plan, or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to any Claims or Equity Interests prior to the Effective Date.

*[Remainder of Page Intentionally Left Blank]*

May 7, 2019
Denver, Colorado

**TRIANGLE PETROLEUM CORPORATION**

*/s/ Ryan D. McGee*
Name:   Ryan D. McGee
Title:    Chief Executive Officer

**EXHIBIT A**

**SCHEDULE OF ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

All Executory Contracts and Unexpired Leases of the Debtor listed on this Exhibit A shall be deemed to be assumed by the Debtor on the Effective Date pursuant to Article VI.B of the Plan, and the Cure amount for each such Executory Contract or Unexpired Lease shall be the amount designated below. To the extent that the Debtor has entered into or does enter into any amendment or modification of any of the Executory Contracts or Unexpired Leases being assumed under this Exhibit A and Article VI.B of the Plan in connection with, or prior to, the assumption of such Executory Contracts or Unexpired Leases, such Executory Contracts or Unexpired Leases will be assumed as amended or modified.

**Nothing contained in the Plan or its exhibits, including this Schedule of Proposed Cure Amounts, shall constitute an admission by the Debtor, Reorganized Debtor, or any other party that any contract or lease (including any listed below) is in fact an Executory Contract or Unexpired Lease or that the Debtor or Reorganized Debtor has any liability thereunder.**

| No. | Cure Amount | Debtor Entity Name | Description of Contract | Contract Counterparty |
|-----|-------------|--------------------|------------------------|------------------------|
| 1. | $0 | Triangle Petroleum Corp. | Corporate Credit Card | American Express |
| 2. | $0 | Triangle Petroleum Corp. | Website Hosting | adWhite LLC |
| 3. | $0 | Triangle Petroleum Corp. | Registered Agent Services | CT Corporation |
| 4. | $0 | Triangle Petroleum Corp. | Payroll Processing | Paylocity |
| 5. | $0 | Triangle Petroleum Corp. | Online Signature Service | DocuSign |
| 6. | $0 | Triangle Petroleum Corp. | Headquarters Office Lease | Regus |
| 7. | $0 | Triangle Petroleum Corp. | Email Hosting | Google |

| No. | Cure Amount | Debtor Entity Name | Description of Contract | Contract Counterparty |
|---|---|---|---|---|
| 8. | $0 | Triangle Petroleum Corp. | Employment Agreement | Ryan McGee |
| 9. | $0 | Triangle Petroleum Corp. | Special Compensation Agreement | Ryan McGee |
| 10. | $0 | Triangle Petroleum Corp. | Human Resources Consultant | Fraser & KMH Group, LLC |
| 11. | $0 | Triangle Petroleum Corp. | 401(k) Plan Advisor | Western Wealth Benefits |
| 12. | $0 | Triangle Petroleum Corp. | Website Domain | Easy DNS |
| 13. | $0 | Triangle Petroleum Corp. | Conference Call Hosting Service | Unlimited Conferencing |
| 14. | $0 | Triangle Petroleum Corp. | IT Consultant | Long View Systems |