**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TRIANGLE PETROLEUM CORPORATION,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 19-11025 (MFW)<br><br>**Ref. Docket No.  11** |

**STIPULATION AND INTERIM ORDER
(I) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION
SECURED LENDERS AND (III) SCHEDULING A FINAL HEARING**

Upon the motion, dated May 8, 2019 (the "Motion"),[2] of Triangle Petroleum Corporation (the "Debtor"), as debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), for interim and final orders pursuant to sections 105, 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules (the "Local Rules") for the United States Bankruptcy Court for the District of Delaware (this "Court") seeking:

(a)      authorization for the Debtor to (1) use "cash collateral" (as such term is defined in section 363(a) of the Bankruptcy Code) pursuant to section 363 of the Bankruptcy Code and (2) provide adequate protection to the Prepetition Lenders (as defined below) on account thereof, in each case, on the terms described herein;

(b)      authorization for the Debtor to perform its obligations hereunder;

---

[1]     The last four digits of the Debtor's taxpayer identification number are 0762.  The Debtor's mailing address is 100 Fillmore Street, 5th Floor, Denver, Colorado 80206.

[2]     Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to such terms in the Motion.

(c)        subject to entry of the Final Order, approval of the waiver by the Debtor of any right to seek to surcharge against the Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code and the waiver by the Debtor of the equities of the case exception under section 552(b) of the Bankruptcy Code;

(d)        vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Order;

(e)        to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing (the "Interim Hearing") on the Motion and a final hearing (the "Final Hearing") for this Court to consider entry of this interim order (this "Order") and a final order (the "Final Order") authorizing and approving the relief requested in the Motion on an interim and final basis, respectively; and

(f)        waiver of any applicable stay (including under Bankruptcy Rule 6004) with respect to the effectiveness and enforceability of this Order and providing for the immediate effectiveness of this Order.

The Interim Hearing having been held by this Court on May 9, 2019, and upon the record made by the Debtor at the Interim Hearing, including without limitation, the admission into evidence of the *Declaration of Ryan D. McGee*, *in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration") filed on the date hereof (the "Petition Date"), and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b)(c), 4001(d) and 9014; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that granting the interim relief requested in the Motion is necessary to avoid immediate

and irreparable harm to the Debtor and its estate pending the Final Hearing, and that authorization to use of Cash Collateral as provided herein and the other terms of this Order are otherwise fair and reasonable, in the best interests of the Debtor, its estate, its creditors and equity holders, and essential for the continuation of the Debtor's business and for a successful chapter 11 process; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

IT IS HEREBY STIPULATED BY THE UNDERSIGNED PARTIES, AND THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:

A.    <u>Jurisdiction</u>.  This Court has core jurisdiction over the Chapter 11 Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    <u>Petition Date</u>.  On the Petition Date, the Debtor commenced the Chapter 11 Case. The Debtor continues to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in this Chapter 11 Case and no statutory committee has been appointed.

C.    <u>Notice</u>.  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtor on (a) the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"); (b) the Debtor's thirty (30) largest unsecured creditors; (c) the Prepetition First Lien Lender (as defined below); (d) the Prepetition Second Lien Noteholder (as defined below); (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) the United States Attorney's Office for the District of Delaware; and (h) any other party entitled to notice pursuant to Bankruptcy Rule 4001 and Local Rule 9013-1(m).  Under the circumstances, the notice given by the Debtor of the Motion, the interim relief requested therein and the Interim

Hearing constitutes due and sufficient notice thereof under the circumstances and complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief sought at the Interim Hearing is necessary or required.

D.    <u>Committee Formation</u>.  Neither an official committee of unsecured creditors (the "<u>Creditors' Committee</u>") nor any other official committee (each, a "<u>Committee</u>") has been appointed in this Chapter 11 Case.

E.    <u>Debtor's Stipulations</u>.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 12 herein), the Debtor admits, stipulates, and agrees that:

(a)    As more fully described in the First Day Declaration, on September 28, 2018, the Debtor entered into a $5 million multi-draw term loan credit agreement (the "<u>Term Loan Agreement</u>") with JPMorgan Chase Bank, N.A. (the "<u>Prepetition First Lien Lender</u>");

(b)    Pursuant to that certain Pledge and Security Agreement, dated as of September 28, 2018, (as amended, supplemented, amended and restated or otherwise modified and in effect from time to time, the "<u>First Lien Security Agreement</u>;" together with the Term Loan Agreement and any other documents executed in connection therewith, the "<u>First Lien Documents</u>") between the Debtor and the Prepetition First Lien Lender, as security for the Debtors' obligations under the Term Loan Agreement, the Debtor granted to the Prepetition First Lien Lender, valid and perfected first priority continuing liens on and security interests in (the "<u>Prepetition First Priority Liens</u>") substantially all of the Debtor's property, including all proceeds thereof (collectively, the "<u>Prepetition Collateral</u>"), as more fully set forth in the First Lien Security Agreement;

(c)    As of the Petition Date, the Debtor was truly and justly indebted and liable to the Prepetition First Lien Lender under the First Lien Documents, without defense, objection, counterclaim or offset of any kind, in the aggregate principal amount of $2 million in respect of term loans advanced thereunder, plus all accrued and unpaid interest thereon and any fees and expenses (including fees and expenses of attorneys and outside consultants) due and payable thereunder ("Prepetition First Lien Obligations");

(d)    The Prepetition First Priority Liens are (i) legal, valid, binding, perfected, enforceable, first priority (subject to any valid liens existing on the Petition Date and permitted to have priority over the Prepetition First Priority Liens under the Term Loan Agreement (the "Prepetition Prior Liens")) liens on and security interests in the Prepetition Collateral and (ii) not subject to avoidance, recharacterization, offset, subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge.  The cash proceeds of the Prepetition Collateral, together with all cash under the Prepetition First Lien Lenders' control, constitutes "Cash Collateral" hereunder to which the Prepetition First Lien Lender has a valid and perfected first priority lien;

(e)    As more fully described in the First Day Declaration, on July 31, 2012, the Debtor entered into a 5.0% convertible promissory note (the "Convertible Note") with NGP Triangle Holdings, LLC ("NGP"), with a principal amount of $120 million.  On or about October 19, 2017, J.P. Morgan Securities, LLC (the "Prepetition Second Lien Noteholder" and, together with the Prepetition First Lien Lender, the "Prepetition Lenders") agreed to purchase the Convertible Note from NGP—with the consent of the Debtor—and to forbear until October 19, 2018, from exercising rights and remedies with respect to an existing event of default thereunder (the "Forbearance Agreement").  As a condition to an

extension of the Forbearance Agreement, the parties thereto agreed to amend and restate the Convertible Note (as so-amended and restated, the "Second Lien Note").

(f)     In connection therewith, pursuant to that certain Pledge and Security Agreement, dated as of September 28, 2018, (as amended, supplemented, amended and restated or otherwise modified and in effect from time to time, the "Second Lien Security Agreement," together with the Second Lien Note and any other documents executed in connection therewith, the "Second Lien Documents") between the Debtor and the Prepetition Second Lien Noteholder, the Debtor granted to the Prepetition Second Lien Noteholder valid and perfected second priority continuing liens on and security interests in the Prepetition Collateral (the "Prepetition Second Priority Liens," together with the Prepetition First Priority Liens, the "Prepetition Liens"), as more fully set forth in the Second Lien Security Agreement;

(g)     As of the Petition Date, the Debtor was truly and justly indebted to the Prepetition Second Lien Noteholder under the Second Lien Note without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $167 million, plus accrued and unpaid interest thereon and fees and expenses, if any (including fees and expenses of attorneys and advisors to the Prepetition Second Lien Noteholder), as provided in the Second Lien Documents (collectively, the "Prepetition Second Lien Obligations," together with the Prepetition First Lien Obligations, the "Prepetition Obligations");

(h)     The liens and security interests granted to Prepetition Second Lien Noteholder under the Second Lien Security Agreement to secure the Prepetition Second Lien Obligations are (i) valid, binding, perfected, enforceable, second priority liens (in each case,

01:24473330.3

subject to the Prepetition First Priority Liens and any Prepetition Prior Liens) on and security interests in the Prepetition Collateral, including Cash Collateral, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) other valid and unavoidable liens properly perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code to the extent such liens are senior to the liens securing the Second Lien Obligations).   The priority of the Prepetition Liens *inter se* are subject to that certain Intercreditor Agreement dated as of September 28, 2018.

(i)        As described in the First Day Declaration, the Debtor's operations are conducted through wholly-owned non-debtor subsidiaries (collectively, the "Non-Debtor Subsidiaries") and other affiliated non-debtor entities.  The Debtor's business consists of a joint venture investment in a midstream services company, Caliber Midstream Holdings, L.P., and the leasing of commercial and multi-unit residential buildings in North Dakota through a wholly-owned subsidiary, Bakken Real Estate Development, LLC.  As set forth in the Prepetition Documents, the Non-Debtor Subsidiaries provided collateral support for the Prepetition Obligations.  By signing below, the Prepetition Lenders have agreed to forbear from exercising rights and remedies against the Non-Debtor Subsidiaries and their respective property during the Specified Period (as defined below).

(j)        neither Prepetition Lender is a control person or insider of the Debtor or any of its affiliates by virtue of any of the actions taken with respect to, or in connection with, the Prepetition Documents (as defined below);

(k)        (i) the Debtor shall not seek to contest, avoid, attack, offset, re-characterize, subordinate or otherwise challenge (under the Bankruptcy Code, under

applicable non-bankruptcy law or otherwise), the Prepetition Obligations or the Prepetition Liens, and (ii) the Debtor forever and irrevocably releases, discharges, and acquits the Prepetition Lenders, and each of their respective former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest and their respective affiliates (collectively, the "Releasees"), solely in their respective capacities as lenders under the applicable First Lien Documents and the Second Lien Documents (collectively, the "Prepetition Documents"), as applicable, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, reasonable attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to any of the Prepetition Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the respective liens or claims of the Prepetition Lenders under the Prepetition Documents, *provided, that*, the releases set forth in this section shall be limited to such claims arising prior to or including the date of the entry of this Order.  The Debtor further

waives and releases any defense, right of counterclaim, right of setoff or deduction of the payment of the Prepetition Obligations that the Debtor now has or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Order;

(l)     no portion of any of the Prepetition Obligations shall be subject to contest, attack, avoidance, impairment, disallowance, defense, counterclaim, recharacterization, reduction, recoupment, setoff, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and

(m)     the aggregate value of the Prepetition Collateral substantially exceeds the aggregate amount of the Prepetition First Lien Obligations.

F.     <u>Findings Regarding the Use of Cash Collateral</u>.

(a)     Good cause has been shown for the entry of this Order.

(b)     The Debtor has an immediate need to use Cash Collateral in order to, among other things, allow for the orderly continuation of its business, preserve the going concern value of the Debtor, satisfy its ongoing obligations (including the payment fees, costs and expenses related to the Chapter 11 Case) and for other general corporate purposes. Absent the Debtor's ability to use Cash Collateral as contemplated herein, the Debtor would not have alternative sources of working capital to pay its post-petition obligations as they become due.  Accordingly, the relief requested in the Motion and the terms herein are (i) critical to the Debtor's ability to maximize the value of its estate, (ii) in the best interests of the Debtor, its estate and other stakeholders and (iii) necessary, essential, and appropriate to avoid immediate and irreparable harm to the Debtor and its estate, creditors, assets, goodwill and reputation.

(c)    The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(d).  Absent granting the interim relief set forth in this Order, the Debtor's estate, its business operations and anticipated restructuring will be jeopardized.  Authorizing the use of the Cash Collateral in accordance with this Order is, therefore, in the best interest of the Debtor and its estate.

G.    <u>Adequate Protection</u>.  As a result of the use of Cash Collateral contemplated hereunder, the subordination of the Prepetition Liens to the Carve Out (as defined below), and the imposition of the automatic stay, the Prepetition Lenders are each entitled to receive adequate protection pursuant to sections 361, 362 and 363 of the Bankruptcy Code to the extent of any diminution in the value of their respective interests in the Prepetition Collateral.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements contemplated herein were negotiated in good faith and at arm's length, are fair and reasonable, reflect the Debtor's prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral.

H.    <u>Section 506(c) and 552(b)</u>.  In light of the Prepetition Lenders' agreement to subordinate the Prepetition Liens and the Adequate Protection Liens to the Carve Out, each of the Prepetition Lenders is entitled to the benefits of a waiver of the provisions of Section 506(c) of the Bankruptcy Code and any "equities of the case" claims under section 552(b) of the Bankruptcy Code, subject, in each case, to a Final Order granting such relief.

I.    <u>Good Cause</u>.  Good cause has been shown for the immediate entry of this Order. Among other things, entry of this Order will minimize disruption of the Debtor's business by enabling the Debtor to satisfy its operating and administrative expenses.  The terms of the Debtor's use of Cash Collateral and proposed adequate protection arrangements, as set forth in

this Interim Order, are fair and reasonable under the circumstances and reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties.

BASED UPON THE STIPULATED TERMS SET FORTH HEREIN, AND FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.      <u>Approval of Motion</u>.  The relief requested in the Motion is granted on an interim basis as set forth herein.  Except as otherwise expressly provided in this Order, any objection to the entry of this Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

2.      <u>Authorization to Use Cash Collateral</u>.  Pursuant to the terms and conditions of this Order, the Debtor is authorized to use Cash Collateral for the period (the "<u>Specified Period</u>") from the Petition Date through the Termination Date (as defined below).

3.      <u>Budget</u>.  (a)  Except as otherwise expressly provided herein, Cash Collateral may be used by the Debtor during the Specified Period up to the amounts (subject to a 15% aggregate cumulative variance to be tested as provided in clause (b) below) and substantially for the purposes identified in the budget attached hereto as <u>Exhibit 1</u>, as such budget may be amended, updated, or extended with the consent of the Prepetition Lenders (the "<u>Approved Budget</u>"); <u>provided</u>, <u>however</u>, that the Debtor may also use Cash Collateral to pay Professional Fees (as defined below), whether or not such amounts exceed the projected amounts therefor in the Approved Budget.

(b)      Not later than 3:00 p.m. (Eastern time) on the last business day of each week commencing with the second full week following the Petition Date, Debtor shall furnish to the Prepetition Lenders a report (the "<u>Budget Compliance Report</u>") that sets forth as of the preceding Saturday of each such week, on a cumulative basis from the Petition

Date, the actual results (and a comparison against the Approved Budget) for each line item set forth in the Approved Budget.

4.     <u>Carve-Out</u>.  (a)  For purposes of this Order, the "Carve-Out" shall mean: (i) fees owing to the United States Trustee incurred in connection with the Chapter 11 Case, (ii) fees and expenses of a trustee in an amount not to exceed $25,000, (iii) professional fees, expenses and disbursements incurred by professional persons employed by the Debtor or any Committee (including any fees and expenses of the members of any Committee) ("<u>Professional Fees</u>") at any time prior to the Carve-Out Trigger Date (as defined below) and (iv) Professional Fees incurred after the Carve-Out Trigger Date in an amount not to exceed $250,000 (the "<u>Post-Trigger Date Carve-Out</u>").  For the purposes of this Order, the "<u>Carve-Out Trigger Date</u>" means the first business day after the Prepetition First Lien Lender provides a written notice to the Debtor and its counsel that the Termination Date has occurred.

(b)     Upon the occurrence of the Carve-Out Trigger Date, to the extent it has funds on hand from time to time in an amount sufficient to enable it to do so, the Debtor shall deposit into an interest-bearing escrow account at a financial institution acceptable to the Prepetition First Lien Lender (the "<u>Carve-Out Account</u>") an amount equal to the Carve-Out.  The failure of the Carve-Out Account to satisfy in full the Carve-Out shall not affect the priority of the Carve-Out.

(c)     The Prepetition First Lien Lender shall retain an automatically perfected and continuing security interest in any residual interest in the Carve-Out Account available following satisfaction in full of all obligations benefiting from the Carve-Out.

5.     <u>Cash Collateral Termination Event</u>.  Upon the occurrence and during the continuance of a Termination Event (as defined below), and the Prepetition First Lien Lender

giving of five (5) Business Days' prior written notice to the Debtor (with a copy to counsel to the

U.S. Trustee, the Prepetition Second Lien Noteholder and counsel to any Committee), the

Debtor's right to use Cash Collateral hereunder shall terminate (the "<u>Termination Date</u>"), subject

to the Debtor's right to seek an emergency hearing with respect thereto.  The occurrence of any

of the following events shall constitute a "<u>Termination Event</u>":

(i)     the Debtor shall have asserted, in a pleading filed with the Court (or another court of competent jurisdiction), a claim or challenge against either Prepetition Lender that is contrary to or inconsistent with, in any material respect, any of the Debtor's acknowledgements, stipulations, and releases contained in paragraph E hereof;

(ii)    the Debtor shall have failed to comply with any material term hereof and the same is not remedied within five (5) days' receipt of written notice of such non-compliance by the Prepetition First Lien Lender;

(iii)   the Debtor shall have filed a motion seeking to incur any postpetition financing or create any postpetition liens or security interests, without the consent of the Prepetition First Lien Lender;

(iv)    if the Debtor seeks, or if there is entered, any modification of this Order that adversely affects any lien, claim, right, or other protection (including without limitation adequate protection) granted to or for the benefit of either Prepetition Lender without the prior written consent of such Prepetition Lender;

(v)     if the Final Order, in a form reasonably acceptable to the Prepetition First Lien Lenders, shall not have been entered on or before the date that is forty (40) days following the entry of this Order;

(vi)    the Debtor's failure to meet the Milestones set forth on <u>Exhibit 2</u> hereto on the terms described therein; or

(vii)   the entry of an order (x) dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (y) appointing a chapter 11 trustee in the Chapter 11 Case, or (z) appointing an examiner having expanded powers (beyond those set forth under sections 1106(a)(3) and (4) of the Bankruptcy Code).

6.     <u>Limitation on Charging Expenses against Collateral</u>.  Subject to and effective

upon entry of the Final Order, except to the extent of the Carve-Out, no expenses of

administration of the Chapter 11 Case or any future proceeding that may result therefrom,

including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Prepetition First Lien Lender, and no such consent shall be implied from any other action or inaction by either Prepetition Lender.

7.    <u>Limitations under Section 552(b) of the Bankruptcy Code</u>.    The Prepetition Lenders shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to and effective upon entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to either Prepetition Lender with respect to (i) proceeds, products, offspring or profits of any of the Collateral or (ii) the extension of the Adequate Protection Liens to cover proceeds of the Collateral.

8.    <u>Payments Free and Clear</u>.    Subject to paragraph 12 hereof, any and all payments or proceeds remitted to the Prepetition Lenders pursuant to the provisions of this Order shall be received free and clear of any claim, charge, assessment or other liability.

9.    <u>Adequate Protection</u>.    Each Prepetition Lender is entitled, pursuant to sections 361 and 363 of the Bankruptcy Code, to adequate protection of its respective valid, perfected and enforceable interest in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in value of its respective interest in the Prepetition Collateral, including without limitation, resulting from the sale, lease or use by the Debtor (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Liens by the Carve-Out and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (each such diminution in value, the "<u>Adequate Protection Obligations</u>").

(a)     As adequate protection, the Prepetition First Lien Lender is hereby granted the following:

(i)     <u>Senior Adequate Protection Liens</u>.    As security for the Adequate Protection Obligations owing to it (the "<u>Senior Adequate Obligations</u>"), the Prepetition First Lien Lender is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof (collectively, the "<u>DIP Collateral</u>", and together with the Prepetition Collateral, the "<u>Collateral</u>" and such lien thereon, the "<u>Senior Adequate Protection Lien</u>"), which shall be subject and subordinate only to (x) the Carve-Out and (y) any Prepetition Prior Liens; <u>provided</u>, that the Senior Adequate Protection Lien (and the Junior Adequate Protective Lien defined below) shall attach to proceeds ("<u>Avoidance Proceeds</u>") recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code only upon the entry of the Final Order granting such relief.  Other than as set forth herein, the Senior Adequate Protection Lien shall not be made subject to or *pari passu* with any lien or security interest previously or hereinafter granted in the Chapter 11 Case or any Successor Case.  The Senior Adequate Protection Lien shall be valid, binding and enforceable against any trustee or other estate representative appointed in the Chapter 11

Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code (each, a "<u>Successor Case</u>") and/or upon the dismissal of any Case or Successor Case.

(ii)     <u>507(b) Claims</u>.   The Senior Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>Senior 507(b) Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to the Carve-Out.

(iii)     <u>Interest, Fees and Expenses</u>.   The Debtor is authorized to pay, as adequate protection, to the Prepetition First Lien Lender all accrued and unpaid interest (including interest accrued prior to the Petition Date) on the amounts outstanding under the First Lien Documents, as and when such interest is due and payable (but for the commencement of the Chapter 11 Case) in accordance with the terms of the First Lien Documents, and to pay all reasonable out of pocket fees and disbursements, including reasonable attorneys' fees and expenses, incurred by the Prepetition First Lien Lender in connection with the Chapter 11 Case and otherwise payable under the First Lien Loan Documents.  None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtor and each Committee may object to the reasonableness of such fees and expenses within ten (10) Business Days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and any professionals retained by the Prepetition First Lien Lender in connection

herewith shall not be required to file any interim or final fee application with respect thereto.  Promptly following the completion of the ten (10) Business Day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph, the Debtor shall pay the professional fees and expenses provided for in this paragraph.

(b)     As adequate protection, the Prepetition Second Lien Noteholder is hereby granted the following:

(i)     <u>Junior Adequate Protection Liens</u>.  As security for the payment of the Adequate Protection Obligations owing to it (the "<u>Junior Adequate Protection Obligations</u>"), the Prepetition Second Lien Noteholder is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Collateral (the "<u>Junior Adequate Protection Lien</u>," together with the Senior Adequate Protection Lien, the "<u>Adequate Protection Liens</u>"), subject and subordinate only to (1) the Prepetition First Priority Liens, (2) the Senior Adequate Protection Lien, (3) the Carve-Out and (4) the Prepetition Prior Liens.

(ii)     <u>Junior 507(b) Claims</u>.  The Junior Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "<u>Junior 507(b) Claims</u>," together with the Senior 507(b) Claims, the "<u>507(b) Claims</u>"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy

Code, subject and subordinate only to (1) the Carve-Out, (2) the Prepetition First Lien Obligations and Prepetition First Priority Liens, (3) the Senior Adequate Protection Obligations and Senior Adequate Protection Lien and (4) the Senior 507(b) Claims; provided, that the Prepetition Junior Lien Lender shall not receive or retain any payments, property or other amounts in respect of the Junior 507(b) Claims unless and until all Prepetition First Lien Obligations and Senior Adequate Protection Obligations shall have indefeasibly been paid in full in cash and the Carve-Out has been funded as provided herein.

(iii)    Interest, Fees and Expenses.  The Debtor is authorized to pay, as adequate protection, to the Prepetition Second Lien Noteholder all accrued and unpaid interest (including interest accrued prior to the Petition Date) on the amounts outstanding under the Second Lien Documents, as and when such interest becomes due and payable (but for the commencement of the Chapter 11 Cases) in accordance with the terms of the Second Lien Documents, and to pay all reasonable out-of-pocket fees and disbursements, including reasonable attorneys' fees and expenses, incurred by the Prepetition Second Lien Noteholder in connection with the Chapter 11 Case and otherwise payable under the Second Lien Documents.   None of the fees and expenses payable pursuant to this paragraph shall be subject to separate approval by this Court (but the U.S. Trustee, the Debtor and each Committee may object to the reasonableness of such fees and expenses within ten (10) Business Days of the receipt of an invoice detailing such fees and expenses, and this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and the professionals retained by the Prepetition Second Lien Noteholder shall not be required to file any interim or final fee application with respect

thereto.   Promptly following the completion of the ten (10) Business Day objection period, if no objection is made or following the resolution of any dispute regarding the fees and expenses payable pursuant to this paragraph, the Debtor shall pay the professional fees and expenses provided for in this paragraph.

10.    <u>Perfection of Adequate Protection Liens.</u>

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to (i) permit the Debtor to implement and perform the terms of this Order and (ii) authorize the Debtor to create, and Prepetition Lenders to perfect, the Adequate Protection Liens granted hereunder.   The Prepetition Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the Adequate Protection Liens granted to them hereunder.   Whether or not the Prepetition Lenders, each in their respective sole discretion, choose to file such financing statements, intellectual property filings, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the Adequate Protection Liens, such Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(b)    A certified copy of this Order may, in the discretion of the relevant Prepetition Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)      The Debtor shall execute and deliver to the relevant Prepetition Lender all such agreements, financing statements, instruments and other documents as such Prepetition Lender may reasonably request to evidence, confirm, validate or perfect the applicable Adequate Protection Liens.

(d)      Subject to entry of the Final Order, to the fullest extent permitted by law, any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more counterparties or other parties or (ii) the payment of any fees or obligations to any governmental entity, in either case, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, contract or the proceeds thereof, or any other Collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code, and any such provision shall have no force and effect with respect to the granting of the Adequate Protection Liens on such leasehold interest, contract or the proceeds of any assignment and/or sale thereof by the Debtor in favor of the Prepetition Lenders in accordance with the terms of this Order.

11.      <u>Preservation of Rights Granted Under the Order</u>.

(a)      Other than the Prepetition Liens and Prepetition Prior Liens, no claim or lien having a priority senior to or *pari passu* with those granted by this Order to the Prepetition Lenders shall be granted or allowed while any portion of the Adequate Protection Obligations remain outstanding, and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)      If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of the Adequate Protection Obligations incurred prior to the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of Adequate Protection Liens.  Notwithstanding any such reversal, stay, modification (other than a modification consented to by the Prepetition Lenders) or vacatur, any use of the Cash Collateral or any Adequate Protection Obligations incurred by the Debtor prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Order, and the Prepetition Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted to them under this Order.

(c)      Except as expressly provided in this Order, the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims, and all other rights and remedies of the Prepetition Lenders granted by this Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code or dismissing the Chapter 11 Case, or (ii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining Adequate Protection Obligations.  The terms and provisions of this Order shall continue in the Chapter 11 Case or any Successor Case, and the Adequate Protection Liens, the Adequate Protection Obligations, the 507(b) Claims and the other administrative claims granted pursuant to this Order, and all other rights and remedies of the Prepetition Lenders granted by this Order shall continue in full force and effect until all Adequate

Protection Obligations are indefeasibly paid in full in cash or otherwise satisfied in accordance with the terms of this Order.

12.    <u>Effect of Stipulations on Third Parties</u>.

(a)    The stipulations and admissions contained herein, including without limitation, in paragraph E of this Order, shall be binding upon the Debtor under all circumstances.  The stipulations and admissions contained in this Order, including without limitation, in paragraph E of this Order, shall be binding upon all other parties in interest unless any a party-in-interest (including any Committee) (a "<u>Challenge Party</u>") that successfully seeks and obtains standing to do so has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including without limitation, in this paragraph) (a "<u>Challenge</u>") with respect to the Prepetition Debt Documents, the Prepetition Obligations, the Prepetition Liens and the transactions related thereto by the earlier of (x) the later of (i) seventy-five (75) days after entry of this Order and (ii) for a Creditors' Committee only, sixty (60) days after the formation of such Committee and (y) the first scheduled hearing date on confirmation of a chapter 11 plan (the "<u>Challenge Period</u>") (as such deadline may be extended with the consent of the Prepetition Lenders) (A) challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the Prepetition Liens or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "<u>Claims and Defenses</u>") against any Prepetition Lender or any of its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, each in their capacity as such, in connection with any matter related to the Prepetition Obligations, the Prepetition

Documents, or the Prepetition Liens; and an order is entered and becomes final in favor of the Challenge Party sustaining any such Challenge.

(b)     If no such Challenge is timely filed (i) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, recovery, for all purposes in the Chapter 11 Case and any Successor Case, (ii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph E, not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery and (iii) the Prepetition First Lien Lender under the First Lien Documents and the Prepetition Second Lien Noteholder under the Second Lien Documents, each in their capacity as such, as applicable, and the Prepetition Obligations and the Prepetition Liens granted to secure such Prepetition Obligations shall not be subject to any other or further challenge, and all parties-in-interest shall be enjoined from seeking to exercise the rights of the Debtor's estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for the Debtor).  Nothing in this Order shall confer standing on any party in interest to assert any Claims or Defenses or otherwise bring any cause of action.

(c)     If any Challenge is timely filed, the stipulations and admissions contained in this Order, including without limitation as set forth in paragraph E of this Order, shall nonetheless remain binding and preclusive (as provided in this paragraph 12) on all parties-in-interest (including the Creditors' Committee, if any), except as to any such findings and admissions that were expressly and successfully challenged in such Challenge.

13.    <u>Limitation on Use of Cash Collateral</u>.  The Debtor shall use the Cash Collateral solely as provided in this Order.  Notwithstanding anything herein or in any other order of this Court to the contrary, none of the Collateral, Cash Collateral or the Carve-Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Prepetition Documents, or the liens or claims granted under this Order or under the Prepetition Documents, (b) assert any Claims and Defenses or any other causes of action against any Prepetition Lender or any of its respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay any Prepetition Lender's exercise of its rights under the Order, (d) seek to modify any of the rights granted to the Prepetition Lenders hereunder without the Prepetition Lenders' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are permitted hereunder or otherwise approved by an order of this Court with the consent of the Prepetition Lenders; *provided that*, notwithstanding anything to the contrary herein, up to $25,000 in the aggregate may be used by any Committee to investigate the validity, enforceability or priority of the Prepetition Obligations and the Prepetition Liens and to investigate any other Claims and Defenses against the Prepetition Lenders.

14.    *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the Prepetition Documents, the provisions of this Order shall govern.

15.    *Binding Effect; Successors and Assigns*.  The provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Chapter 11 Case, including without limitation, the Prepetition Lenders, the Debtor and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the

Debtor, an examiner with expanded powers appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the Prepetition Lenders, the Debtor and their respective successors and assigns; *provided that*, except to the extent expressly set forth in this Order, the Prepetition Lenders shall have no obligation to permit the use of the Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtor.

16.    *Limitation of Liability*.  In permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order, the Prepetition Lenders shall not solely by reason thereof be deemed in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.* as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the Prepetition Debt Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Lenders of any liability for any claims arising from the prepetition or post-petition activities of any of the Debtor.

17.    *Proofs of Claim.*  Neither Prepetition Lender shall be required to file a proof of claim in the Chapter 11 Case or any Successor Cases for any claim allowed herein or under the applicable Prepetition Documents, and neither Prepetition Lender shall be required to file proofs of claim or request for payment of an administrative expense in the Chapter 11 Case or any Successor Case for any claim in respect of the Adequate Protection Obligations or any other rights, claims or protections granted to it hereunder.

18.    *No Waiver.*  The failure of any Prepetition Lender to seek relief or otherwise exercise their rights and remedies under this Order or the Prepetition Documents, as applicable, shall not constitute a waiver of any of the Prepetition Lenders' rights hereunder, thereunder, or otherwise.  Except as expressly provided herein, the entry of this Order and the entry of the Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the respective rights, claims, privileges, objections, defenses or remedies of the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court.

19.    *No third-party rights.*  Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

20.    *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.

21.    ***Final Hearing*.  The Final Hearing is scheduled for June 14, 2019, at 10:30 a.m. (prevailing Eastern Time), before this Court.**

22.    *Retention of Jurisdiction.*  This Court shall have and retain exclusive jurisdiction to enforce the terms of this Order and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Order.

23.    *Final Hearing Notice.*  The Debtor shall promptly serve copies of this Order (which shall constitute adequate notice of the Final Hearing) on the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Creditors' Committee, if any, after the same has been appointed.  Any party-in-

interest objecting to the relief sought at the Final Hearing shall file written objections; which objections shall be served upon (a) the Debtor, Triangle Petroleum Corporation, 100 Fillmore Street, 5th Floor, Denver, Colorado 80206, Attn: Ryan D. McGee, Esq. (rmcgee@trianglepetroleum.com); (b) proposed co-counsel to the Debtor, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019, Attn: Kelley A. Cornish, Esq. (kcornish@paulweiss.com) and Alexander Woolverton, Esq. (awoolverton@paulweiss.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Pauline K. Morgan, Esq. (pmorgan@ycst.com), Andrew L. Magaziner, Esq. (amagaziner@ycst.com), and Shane Reil, Esq. (sreil@ycst.com); (c) counsel to the Prepetition Lenders, Duane Morris LLP, 30 South 17th Street, Philadelphia, PA 19103-4196, Attn: Lawrence J. Kotler, Esq. (ljkotler@duanemorris.com); (d) the Office of the United States Trustee for the District of Delaware, 844 N King St., Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Timothy J. Fox, Esq. (Timothy.Fox@usdoj.gov); and (f) counsel to any statutory committee appointed in the Chapter 11 Case, in each case to allow for actual receipt by the foregoing by no later than **May 31, 2019 at 4:00 p.m. (prevailing Eastern time)**.

01:24473330.3

**Dated: May 9th, 2019**
**Wilmington, Delaware**

27

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**